UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RICKY L. MONTGOMERY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:21-CV-350-JEM |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Ricky Montgomery on September 9, 2021, and Plaintiff's Brief in Support of Plaintiff's Complaint to Review Decision of Social Security Administration [DE 19], filed on March 28, 2022. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On May 6, 2022, the Commissioner filed a response, and Plaintiff filed a reply on May 23, 2022. For the following reasons, the Court remands the Commissioner's decision.

**I.     Background**

Plaintiff was previously found disabled in a determination dated July 3, 2003, but in a decision dated February 2, 2018, it was determined that as of January 6, 2016, Plaintiff was no longer disabled. After an initial hearing and appeal to the Northern District of Indiana, the case was remanded back to the agency on September 28, 2020, and on October 23, 2020, the Appeals Council remanded the case for a new hearing.  On March 18, 2021, Administrative Law Judge ("ALJ") William D. Pierson held a telephonic hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On May 12, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.

1

The ALJ made the following findings under the required five-step analysis:

1. The most recent favorable medical decision finding that the claimant is disabled is the determination dated July, 3, 2003, known as the comparison point decision ("CPD").

2. At the time of the CPD, the claimant had the medically determinable impairment of chronic renal failing. It was found to meet section 6.02A of 20 CFR Part 404, Subpart P, Appendix 1.

3. The claimant completed a trial work period that began in October 2011 and ended in June 2013.

4. After completing the trial work period, the claimant performed substantial gainful activity from April 1, 2015, through June 30, 2015. However, the claimant again performed substantial gainful activity beginning by at least the third quarter of 2018 and continuing.

5. The medical evidence establishes that since January 6, 2016, the claimant has had the following medically determinable impairments: chronic nephritic syndrome; status post renal transplant; end stage renal disease; and neuropathic foot pain. These are the claimant's current impairments.

6. Since January 6, 2016, the claimant has not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

7. Medical improvement occurred on January 6, 2016.

8. The medical improvement is related to the ability to work because by January 6, 2016, the claimant's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD or the applicable updated Listings.

9. Since January 6, 2016, the claimant has continued to have a severe impairment or combination of impairments.

10. Based on the impairments present since January 6, 2016, the claimant has the residual functional capacity to perform the full range of sedentary work.

11. The claimant has no past relevant work.

12. On January 6, 2016, the claimant was a younger individual age 18-44.

13. The claimant has at least a high school education.

14. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

15. Since January 6, 2016, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since January 6, 2016, the claimant has been able to perform a significant number of jobs in the national economy.

16. The claimant's disability ended on January 6, 2016, and the claimant has not become disabled again since that date.

Plaintiff now seeks judicial review of this decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.   Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2014). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in cherry-picking information from the state agency

physician report, erred in the credibility analysis, and failed to recognize Plaintiff's need for accommodation. The Commissioner argues that the ALJ properly evaluated the opinion evidence and Plaintiff's subjective complaints and cited substantial evidence to support each of his findings.

Plaintiff first argued that the ALJ erred in his assessment of the report completed by the state agency physician. She examined Plaintiff and completed an assessment opining that he can walk and stand for about 10-15 minutes each; can climb about 2-3 steps; and can lift 10 pounds with his right arm, 5 pounds with his left arm, and 10 pounds with both arms. AR 1123. He is unable to read very small print, but otherwise can perform the described visual tasks. AR 1124. The ALJ addressed the normal findings from the opinion, but, despite the functional capacity section of the report explicitly laying out some work-related limitations, stated that "Dr. Greer did not offer an opinion with regard to work-related function." AR 1381. This leads to concerns that the ALJ ignored portions of the record that are inconsistent with his conclusion. *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ appears to have disregarded the fact that "[a] medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [their] folder," 20 C.F.R. § 404.1520c(c)(3)(i)-(v); *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (expressing disapproval where "ALJ assigned little weight to every medical opinion related to physical conditions except for the one provided by . . . an agency physician who never examined [the plaintiff]."); *Kaminski v. Berryhill*, 894 F.3d 870, 874–75 (7th Cir. 2018), amended on reh'g (Aug. 30, 2018) ("The judge also impermissibly cherry-picked evidence. Specifically, the judge appears

to have overlooked the consulting psychologist's report . . . yet relied heavily on the reports of doctors who did not examine [plaintiff] but who opined that he could work with some restrictions.").

The Court's cherry-picking concerns extend to the ALJ's treatment of the hearing testimony. Plaintiff testified that he increased his hours from part time to full time after his disability benefits were removed, and that the transition has caused increased health problems. AR 1400-04. He explained that one of the ways he copes is that at his current job, he keeps his feet elevated on a chair for about an hour to ninety minutes per shift. AR 1403. The VE testified that a worker elevating their legs for 60-90 minutes per day is an accommodation and would normally be work-preclusive. AR 1407. The ALJ concluded that evidence does not support Plaintiff's need to elevate his legs because there was not any documentation that his work allowed it as a particular accommodation and concluded that Plaintiff had been capable of increasing his work hours before he did so, but waited until he stopped receiving benefits. However, attempting to work after the onset of disability does not necessarily mean that a person is not disabled. As the Seventh Circuit has noted, "even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("[A] claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms."); *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("[The plaintiff] was able to work . . . only because [her employer] was a friend who tolerated frequent breaks and absences that an ordinary employer would have found unacceptable. This does not contradict her claim of disability."); *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) ("A desperate

6

person might force herself to work – or . . . certify that she is able to work – but that does not necessarily mean she is not disabled."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."); *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003) ("[T]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation."). In this case, the ALJ considered Plaintiff to be less than credible because of confusion at the hearing regarding which increases in income were due to increase in pay and which were due to an increase in hours. Rather than intentional obfuscation, it appears to the Court that this may be a scenario in which Plaintiff increased the hours at his job because he needed the income and was able to obtain unofficial accommodations in his workplace to enable him to keep working despite his physical difficulties. The ability of the ALJ "to consider [the plaintiff]'s physical appearance and demeanor at the hearing as one factor in assessing [his] credibility" is lessened in this case, where the hearing was held over the telephone. *Burton v. Barnhart*, 203 F. App'x 737, 743 (7th Cir. 2006) (citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir.2000)). The inability to see each other increases the risk of communication misunderstandings in a hearing such as this, and the ALJ could not see what accommodations Plaintiff was using to assist him during the hearing, or any discomfort that might have shown on his face or in his posture.

The most troublesome part of the analysis, however, is the ALJ's decision to conclude that Plaintiff need not elevate his legs during the workday, apparently based on the VE's testimony that someone who does so would be precluded from work. He reasoned that "the claimant has offered no documentation that such an accommodation has been given, or required," AR 1373-74, but

7

Plaintiff did not testify that it was an official ADA accommodation, nor that he would not request it at other jobs. The fact that he did not need to undergo an official process in order to obtain the assistance he needed to keep working despite his medical limitations does not mean that they are not real. Despite the ALJ's assertion that "the evidence does not substantiate edema or other symptoms that would require the claimant to elevate his legs," AR 1382, there are repeated reports of swelling in the record, including an ER visit for foot tingling and other concerns during the time he was working full time. AR 1306, 1315, 1688, 1707. The ALJ failed to trace a logical bridge between the examining physician's reports of limitations, Plaintiff's testimony of the need to work in order to afford to live, the accommodations he required to do so, and the medical difficulties he suffered despite those accommodations, to the conclusion that Plaintiff is able to do a full range of sedentary work for full workweeks with no accommodation needed and no undue absences for flares of his medical condition. This matter is being remanded for a new RFC that fully incorporates all of Plaintiff's limitations and adequately analyzes all of the evidence in the record.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Plaintiff's Complaint to Review Decision of Social Security Administration [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 19th day of August, 2022.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:  All counsel of record